**AFL–CIO, et al., Plaintiffs,**

v.

**Elizabeth DOLE, et al., Defendants,**

and

**National Council of Agricultural Employers, et al.,**
**Defendants–Intervenors,**

and

**American Farm Bureau Federation,**
**Defendant–Intervenor.**

**Civ. A. No. 89–2315–SS.**

United States District Court,
District of Columbia.

Aug. 30, 1990.

Shelley Davis, Migrant Legal Action Program Inc., Washington, D.C., for plaintiffs.

Drake Cutini, Dept. of Justice, Washington, D.C., for defendants.

John M. Simpson, Fulbright & Jaworski, Washington, D.C., for defendant-intervenor National Council of Agr. Employers.

Patricia A. McCoy, Mayer, Brown & Platt, Washington, D.C., for defendant-intervenor American Farm Bureau Federation.

MEMORANDUM OPINION

SPORKIN, District Judge.

This matter is before the Court on plaintiffs' motion for summary judgment, defendants' motion to dismiss, and the opposition to these motions. Plaintiffs challenge the United States Department of Labor's ("DOL") Adverse Effect Wage Rate ("AEWR") regulation, 20 C.F.R. § 655.107(a) (1989).

## I. BACKGROUND

Plaintiffs in this action challenge the DOL's AEWR regulation. The DOL promulgated this regulation pursuant to statutory mandate of the Immigration Reform and Control Act of 1986 ("IRCA"). 8 U.S.C. § 1188(a)(1) (1988).[1] Section 1188(a)(1) of IRCA requires that, before the Attorney General can approve a petition for the importation of alien workers, the employer seeking the approval must first obtain from the Secretary of Labor certification that:

> (A) there are not sufficient workers who are able, willing, and qualified, and who will be available at the time and place needed, to perform the labor or services involved in the petition, and
>
> (B) the employment of the alien in such labor or services will not *adversely affect* the wages and working conditions

of workers in the United States similarly employed.

*Id.* (emphasis added).

In an effort to comply with this statutory mandate, the DOL promulgated the AEWR regulation. The regulation's objective is to limit the negative impact upon wage rates that results from the increase in the labor supply that accompanies the presence of alien farmworkers. Accordingly, the regulation establishes a floor wage for agricultural workers, the "adverse effect wage rate." AEWRs were designed to approximate the wage rates that the market conditions would warrant in the absence of an increased foreign labor supply. Prior to 1987, the DOL utilized a methodology that produced wage enhancing AEWRs approximately 20 percent above the average farm wage as determined by the United States Department of Agriculture ("USDA"). *See AFL–CIO v. Brock,* 668 F.Supp. 31, 34–35 (D.D.C.), *remanded,* 835 F.2d 912 (D.C.Cir. 1987).

This is the third time that this Court has reviewed the validity of the DOL's AEWR regulation. Initially, this Court enjoined the implementation of the AEWR regulation, 20 C.F.R. § 655.107, 52 Fed.Reg. 20521 (June 1, 1987).[2] *AFL–CIO v. Brock, supra.* This Court reviewed the regulation and found, *inter alia,* that the "DOL has failed to demonstrate that the regulations it promulgated do anything to protect the

---

**1.** This statutory section was originally codified at 8 U.S.C. § 1186(a)(1) (1982 & Supp. IV 1986). IRCA was amended in 1988 and the relevant provision was simply transferred to another part of the statute. The pertinent language of the provision was not changed.

**2.** The AEWR regulation provides:

(a) *Computation and publication of AEWRs.* Except as otherwise provided in this section, the AEWRs for all agricultural employment (except for those occupations deemed inappropriate under the special circumstances provisions of § 655.93 of this part) for which temporary alien agricultural labor certification is being sought shall be equal to the annual weighted average hourly wage rate for field and livestock workers (combined) for the region as published annually by the U.S. Department of Agriculture (USDA) based on the USDA quarterly wage survey. The Director shall publish, at least once in each calendar year, on a date or dates to be determined by the Director, AEWRs for each State (for which USDA publishes regional data), cal-

culated pursuant to this paragraph (a) as a notice or notices in the *Federal Register.*

(b) *Higher prevailing wage rates.* If, as the result of a State agency prevailing wage survey determination, the prevailing wage rate in an area and agricultural activity (as determined by the State agency survey and verified by the Director) is found to be higher that [sic] the AEWR computed pursuant to paragraph (a) of this section, the higher prevailing wage rate shall be offered and paid to all workers by employers seeking temporary alien agricultural labor certification for that agricultural activity and area.

(c) *Federal minimum wage rate.* In no event shall an AEWR computed pursuant to this section be lower than the hourly wage rate published in 29 U.S.C. § 206(a)(1) and currently in effect.

This regulation was originally promulgated June 1, 1987, and then republished July 5, 1989.

wages and working conditions of workers in the United States and thus these regulations are contrary to law." *Id.* at 37. Furthermore, this Court concluded that "the process by which the Department arrived at the present rules [was] flawed by the absence of an appropriate explanation." *Id.* at 40.

The DOL appealed the decision of this Court. The Court of Appeals, in reviewing the case, declared:

> Agencies may not substantially alter regulatory policy without a reasoned explanation. The Department of Labor's new temporary alien agricultural labor certification program reverses a two decade old, court-approved policy of enhancing wage compensation to benefit United States farm workers. In abandoning that approach, the Department was required to justify its fundamental change of interpretation in its statutory mandate to protect American workers from the adverse effect of temporary foreign workers.

*AFL–CIO v. Brock,* 835 F.2d 912, 919–20 (D.C.Cir.1987), *remanding* 668 F.Supp. 31 (D.D.C.). This Court then directed the DOL to issue a "reasoned explanation" for the actions it took in adopting the 1987 AEWR regulation. Upon reviewing the explanation proffered by the DOL, this Court found it not to provide a reasoned justification for the adoption of the new AEWR regulation. "Despite DOL's conclusions, the majority of the studies cited in the DOL explanation indicate that instances of wage depression do exist." *AFL–CIO v. McLaughlin,* 702 F.Supp. 307, 311 (D.D.C. 1988). The DOL appealed this decision as well. However, since the DOL had published a final AEWR regulation by the time the appeal was to be heard, the Court of Appeals dismissed the case as moot. *AFL–CIO v. Dole,* No. 89–5011, 1989 WL 105583 (D.C.Cir. Aug. 9, 1989) (order dismissing case as moot).

In the instant action, plaintiffs challenge the final AEWR regulation that the DOL published on July 5, 1989. *See* 54 Fed.Reg. 28,037 (July 5, 1989). The language of the final regulation is identical to that which was originally promulgated in June 1987. *See supra* note 2.

## II. STANDARD OF REVIEW

The applicable standard of review requires judicial deference to the agency's judgment. The Court must consider whether the agency's action was based on a consideration of relevant factors and whether there has been a clear error in judgment. *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 824, 28 L.Ed.2d 136 (1971). "Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency." *Id.* Notwithstanding this deference, the agency must also "examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983) (quoting *Burlington Truck Lines, Inc. v. United States,* 371 U.S. 156, 168, 83 S.Ct. 239, 246, 9 L.Ed.2d 207 (1962)). Here, the DOL promulgated a final AEWR regulation accompanied by a statement explaining the basis for the agency's action. In reviewing such an explanation, a court must "consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *State Farm,* 463 U.S. at 43, 103 S.Ct. at 2866–67 (quoting *Bowman Transportation, Inc. v. Arkansas– Best Freight System, Inc.,* 419 U.S. 281, 285, 95 S.Ct. 438, 441, 42 L.Ed.2d 447 (1974)).

As the Court of Appeals has previously noted in this case, deference is owed to long-standing policies or statutory interpretations of an agency, and departures from such agency precedent are subject to close judicial scrutiny. *AFL–CIO v. Brock,* 835 F.2d at 917. This is not to say, however, that an agency cannot vary its policies in response to changed circumstances. As the D.C. Circuit has stated:

[An] agency may flatly repudiate ... [its prior] norms, deciding, for example, that changed circumstances mean that they are no longer required in order to effectuate congressional policy. Or it may narrow the zone in which some rule will be applied, because it appears that a more discriminating invocation of the rule will best serve congressional policy.... *Whatever the ground for the departure from prior norms, however, it must be clearly set forth* so that the reviewing court may understand the basis of the agency's action and so may judge the consistency of that action with the agency's mandate.

*Id.* (quoting *Atchison, Topeka & Sante Fe Ry. Co. v. Wichita Bd. of Trade*, 412 U.S. 800, 808, 93 S.Ct. 2367, 2375, 37 L.Ed.2d 350 (1973)).

## III. DISCUSSION

█ In 1987, the Court of Appeals directed the DOL to "justify" the fundamental change that it had taken and to provide "a reasoned explanation of that change." *AFL–CIO v. Brock*, 835 F.2d at 919–20. This Court after reviewing the explanation proffered by the DOL concluded that the agency had failed adequately to explain its actions. This decision was not reviewed because the Court of Appeals determined that the publication of a final AEWR regulation replacing the interim regulation, which this Court had reviewed, mooted the issue on appeal. However, the final regulation promulgated by the DOL is identical to the interim rule that this Court held to be invalid. After reviewing the final regulation and its accompanying explanation, this Court again concludes that the AEWR regulation must be invalidated. The Court has made this determination because it is convinced that the DOL has not approached this matter with an open mind. Instead, the agency continues to justify its past actions with post-hoc rationalizations.

In its July 5, 1989, statement which accompanied the publication of the final AEWR regulation, the DOL engaged in elaborate discussion of the history behind the AEWR provision and outlined its reasons for adopting a new methodology. In explaining the basis for the change in methodology, the DOL stated:

In all its long history of dealing with AEWRs, DOL has employed a number of methodologies for setting AEWRs during the different periods of time. None of these methodologies ever has purported to add an enhancement to the USDA rates. To the contrary, DOL's efforts to set Statewide AEWRs have always been in response to instances where it was thought that wage depression existed in specific crops or activities.

52 Fed.Reg. 28040 (July 5, 1989). In making such assertions, the DOL directly contradicts specific findings that this Court and the Court of Appeals made during earlier stages of this litigation. Specifically, the Court of Appeals declared:

The June 1, 1987 AEWRs represent a dramatic shift in the Department's wage policy. In the past the Department has responded to depressed wages caused by the past employment of temporary and undocumented foreign workers by enhancing the AEWR above this depressed wage level; now it asserts that it will no longer consider such past effect. The Department's abrupt reversal of its enhancement policy marks a significant, highly redistributive change in policy. The policy of enhancing AEWRs—to the benefit of all farmworkers—has been explicit in the Department's regulations at least since 1978.

*AFL–CIO v. Brock*, 835 F.2d at 917–18. The July 5, 1989 AEWR regulation is identical to the June 1, 1987 AEWR provision that the Court of Appeals had the opportunity to review. Apparently, the DOL did not consider itself bound by the express findings of the Court of Appeals. Indeed, such indifference by the DOL to concerns expressed by the court serves to demonstrate the agency's predisposition in this matter.

█ The entire statement that accompanied the July 5, 1989, final regulation fails to provide a reasoned explanation for the DOL's decision to adopt a dramatic change in its past policy. The DOL statement acknowledges that the presence of illegal

alien workers has at times had an adverse effect on wage rates. 58 Fed.Reg. 28041–42 (citing *1986 Economic Report of the President;* GAO, *Illegal Aliens: Influence of Illegal Workers on Wages and Working Conditions of Legal Workers* (March 1988)). The DOL dismissed these conclusions finding that the incidence of wage depression was limited and localized. In addition, the agency concluded that the scientific data tends to be mixed and inconclusive. It is on this basis that the agency claims to have made a reasoned decision to abandon its former methodology. This decision was made in the face of an adverse finding by the General Accounting Office ("GAO").[3] This Court holds that where a policy has been in place for many years an agency must rely on something more than admittedly inconclusive data if it chooses to vary its course.[4] In short, the agency has not satisfied its burden where the available information is at best inconclusive.[5]

In light of this background, DOL's objectivity on this issue must be questioned. The Court of Appeals has expressed such concerns in other contexts where an agency has been instructed on remand to further explain its decision. The Court of Appeals unequivocally stated:

> To be sure, where, as here, the remand merely requires the agency further to elaborate its reasoning, there is no requirement that the agency arrive at a different substantive result upon reconsideration. At the same time, we must recognize the danger that an agency having reached a particular result, may become so committed to that result as to resist engaging in any genuine reconsideration of the issues. The agency's action on remand must be more than a barren exercise of supplying reasons to support a pre-ordained result.

*Food Marketing Institute v. I.C.C.,* 587 F.2d 1285, 1290 (D.C.Cir.1978). The insightful language of the Court of Appeals is particularly applicable here.

It is quite clear the DOL has failed in the discharge of its responsibility to protect this nation's workers from the unfair competition of foreign nationals. The concept behind the AEWR is to provide United States farm workers an enhanced wage to counter wage depression resulting from the importation of foreign workers.

DOL obviously has been playing politics with the AEWR. The lineup of the parties to this litigation pits the U.S. farm worker against the growers who have joined the litigation as intervenor defendants. It is quite interesting that the new AEWR rate has been rejected flat-out by its intended beneficiaries, the farm workers, and has been embraced by those normally adversely affected by the AEWR, namely the growers. The Court rejects the DOL's assertion that the new AEWR rate furthers the interests of U.S. farm workers as it is clear it does not.

Accordingly, it is the Court's finding that the new AEWR methodology adopted by

---

**3.** The GAO has conducted several studies which examine the impact of alien workers on the domestic work force. These studies were available to the DOL at the time it promulgated the AEWR regulation. Indeed, many of them are included in the administrative record compiled by the DOL. GAO's findings conflict with DOL's assertion that determining the AEWR solely by reference to the USDA average wage survey adequately compensates domestic workers for the wage depression resulting from the presence of foreign workers. Specifically, GAO concluded: "DOL describes AEWRs under current methods of calculation as a wage floor to prevent adverse wage impacts but does not explain why the level of a general farm wage as a minimum wage provides this protection. Since the average general farm wage used to set AEWRs appears to underestimate the average wages of domestic workers in the same occupa-

tions as H–2A workers, AEWRs based on regional average wages of a population more representative of workers in the same occupations as H–2A workers would likely be a higher rate than that calculated under current DOL regulations." General Accounting Office, The H–2A Program: Protections for U.S. Farmworkers 59 (October, 1988).

**4.** As stated by the agency, "DOL views the data and literature as inconclusive on the issue of adverse effect or wage depression from the presence of illegal alien workers on the USDA data series." 52 Fed.Reg. 28043 (July 5, 1989).

**5.** *See supra* note 3, discussing GAO's findings that the current AEWR formula underestimates the average wages of domestic workers in the same occupations as H–2A workers.

the DOL runs contrary to its intended purpose. Under the final regulation, the AEWR is set simply at the average prevailing wage for domestic field and livestock workers, as measured by the USDA quarterly wage survey. The problem with this formula is that it fails adequately to account for the wage depression that resulted from the past employment of alien workers. Thus, the current AEWR generates a wage rate below that which would have been produced from an exclusively domestic labor supply. The existing wage structure incorporates this wage depression; "the new rates will necessarily perpetuate this past adverse effect." *AFL–CIO v. Brock*, 835 F.2d at 914.

Moreover, the AEWR regulation fails to achieve the statutory purpose of ensuring that employers hire aliens only if the domestic work force has been exhausted. The pre–1987 AEWR regulation promoted this objective by requiring employers seeking to hire H–2A employees to offer a premium over existing wage levels. Any available domestic workers would be attracted by this premium. The new AEWR regulation eviscerates this safeguard. The DOL has clearly acted arbitrarily and capriciously in its adoption of the final AEWR regulation and the Court will enjoin any further utilization of that regulation's wage setting formula. Because of the DOL's persistent failure to discharge its obligations, not only is an injunction warranted but the Court feels itself compelled to reinstitute the AEWR formula in effect prior to June 1, 1987. This formula will stay in effect unless and until the DOL adopts a new regulation that incorporates a methodology consistent with the underlying AEWR concept.